IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Charles Henry,<br>            Petitioner,<br>vs.<br>Charles L. Ryan, et al.,<br>            Respondents. | No. CV-12-198-TUC-JGZ-DTF<br><br>**REPORT AND RECOMMENDATION** |

      Petitioner Thomas Henry has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. In accordance with the Rules of Practice of the Court, this matter was referred to Magistrate Judge Ferraro for Report and Recommendation. Before this Court are the Petition (Doc. 1) and Respondents' Answer (Doc. 11). The Magistrate Judge recommends that the District Court, after its independent review of the record, dismiss the petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

      Petitioner was tried with co-defendant James Staples (Henry's half-brother) and convicted of two counts of aggravated assault, one count of attempted armed robbery, one count of attempted aggravated robbery, one count of burglary in the first degree, and two counts of kidnaping. (Doc. 11, Ex. F.) He was sentenced to a total of fifty-six years in prison. (*Id.*) The convictions were based on the September 4, 2005 armed home invasion of Robert Jackson's house, where Jackson, Arturo Navarro, and Jackson's two young children were present. Navarro was struck in the head with a gun and Jackson was shot twice in the leg. Henry filed an appeal, which was denied by the Arizona Court of Appeals. (*Id.*, Ex. J.) The Arizona Supreme Court denied review. (*Id.*, Exs. K., L.) Henry subsequently filed a petition

for post-conviction relief (PCR). (*Id.*, Exs. M, N.) The PCR court denied his ineffective assistance of counsel claims on the merits. (*Id.*, Ex. Q.) Petitioner sought review in the court of appeals on most, but not all, of the claims in his PCR petition. (*Id.*, Ex. R.) Review was granted but relief was denied. (*Id.*, Ex S.)

## **DISCUSSION**

Respondents do not dispute the timeliness of the petition and concede that the two claims are exhausted (Doc. 11 at 9); therefore, the Court assesses them on the merits.

## **LEGAL STANDARD FOR RELIEF UNDER THE AEDPA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reducing delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "'highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final."

*Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at 25.

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based upon an unreasonable determination of the facts. *Miller-El v.*

*Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

**MERITS ANALYSIS**

Claim 1 is a five-part claim alleging ineffective assistance of trial counsel. Claim 2 alleges ineffective assistance of appellate counsel.

**Ineffective Assistance of Counsel Standard**

There is a Sixth Amendment right to effective assistance of counsel at trial and on appeal. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The standards for ineffective assistance of counsel (IAC) claims are set forth in *Strickland*. To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. 466 U.S. at 687-88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland*'s first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice

- 4 -

1  . . . that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at
2  693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but
3  for counsel's unprofessional errors, the result of the proceeding would have been different.
4  A reasonable probability is a probability sufficient to undermine confidence in the outcome."
5  *Id.* at 694.

**Claim 1(a)**

7  Petitioner alleges trial counsel was ineffective for failing to object to prosecutorial
8  misconduct during closing arguments. Petitioner argues counsel should have objected to
9  several statements by the prosecutor that gave his personal opinion on Petitioner's guilt. First,
10 the prosecutor referenced a picture of Henry at the time he was apprehended and stated, "[i]t
11 looks like Mr. Henry has been in some kind of fight. It looks like he's been in a violent
12 fight." (RT 2/16/2006 at 21.) Second, after summarizing the evidence, he stated:

> Ladies and gentlemen, this is not a whodunit case. It's very clear these are the two individuals that were in that house. It's very clear these are the two individuals that fought violently with Mr. Jackson, Sr., and tried to take his money, and it's very clear that Mr. Staples is the individual that shot him twice.

16 (*Id.* at 23-24.) Finally, the prosecutor, in rebuttal, after posing numerous rhetorical questions
17 argued:

> There is just one answer to every question that I just posed to you, and the answer is because it's them. Because these are the guys that did it. That one fact explains everything that I just asked you about, and that is evidence that you can consider in this case, and that is compelling evidence, that is evidence beyond a reasonable doubt, and we ask this jury to find the defendants guilty.

21 (*Id.* at 80.) Henry contends he was prejudiced by these prosecutorial arguments because, if
22 counsel had objected, a mistrial would have been granted.
23 The PCR court found that the prosecutor's statements did not amount to misconduct
24 and, therefore, counsel's failure to object did not amount to IAC. (Doc. 11, Ex. Q at 4-5.)
25 This Court acknowledges that the prosecutor's argument was vigorous advocacy but it was
26 not misconduct.

To establish misconduct,[1] a defendant must prove not only that the prosecutor's remarks were improper but that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)); *see Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). During closing argument, "prosecutors are allowed reasonably wide latitude and are free to argue reasonable inferences from the evidence." *United States v. McChristian*, 47 F.3d 1499, 1507 (9th Cir. 1995); *see United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997). A prosecutor may not express to the jury his personal opinion of the defendant's guilt. *United States v. Wright*, 625 F.3d 583, 609 (9th Cir. 2010).

The Court has reviewed the particular pieces of the prosecutor's argument on which Henry relies, as well as the remainder of his argument. The prosecutor did not offer his personal opinion on Henry's guilt. He posed numerous questions suggested by the evidence and then offered the reasonable inference that the defendants on trial had committed the crime. As the Supreme Court has held, a prosecutor "may prosecute with earnestness and vigor - indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). This argument was not foul and counsel was not ineffective for failing to object to it. The PCR court's finding that trial counsel was not ineffective was not objectively unreasonable.

---

[1] Respondents argue that Petitioner's claim fails because he does not rely on Supreme Court law governing prosecutorial misconduct claims. The Court disagrees. The claim Petitioner is alleging is one of ineffective assistance of counsel, which is governed by clearly established Supreme Court law set forth in *Strickland*. Counsel could be constitutionally ineffective for an act or omission that was unreasonable in light of governing Arizona law. With respect to prosecutorial misconduct, a comparison of the federal law cited by this Court and the state law cited by the PCR court (Doc. 11, Ex. Q at 3-4) reveals that the law is essentially the same.

**Claim 1(b)**

Petitioner argues counsel was ineffective in failing to cross-examine witness Detective Schneider effectively. Specifically, he contends counsel did not question Detective Schneider about inconsistencies in victim Navarro's statements about what Henry was wearing on the night of the crime. Further, he contends counsel should have asked Detective Schneider about a statement in his report by one of the children in the house on the night of the crime, in which she inaccurately described Petitioner's clothing. Henry argues that identification was the central issue in the case and if these inconsistencies had been highlighted Henry may not have been convicted.

The PCR court denied the claim finding that Henry failed to establish prejudice. (Doc. 11, Ex. Q at 5.) Further, the court held:

> Petitioner does not demonstrate how Trial Counsel's failure to point out the inconsistencies in either witness's testimony was not a tactical one, but due to ineptitude, inexperience, or lack of preparation. Furthermore, the record indicates that immediately before Trial Counsel's cross-examination, Co-Defendant's counsel conducted a thorough cross-examination of Detective Schneider regarding Mr. Navarro's statements. Trial Counsel also cross-examined Mr. Navarro and questioned the inconsistencies in his identification of Petitioner. Based on these facts, it is reasonable to conclude that Trial Counsel made a tactical decision to not question the detective regarding any inconsistencies in Mr. Navarro's description of what Petitioner was wearing on the night of the incident in order to avoid repetition and to focus his cross-examination on issues not covered by Co-Defendant's counsel. This conclusion is supported by Trial Counsel's statement during his closing argument, which is reflective of Trial Counsel's tactical approach to Petitioner's trial: " . . . I don't want to . . . waste any of your time and I don't want to be redone and I don't want to talk about things that have already been talked about . . ." (Trial Tr. 54:11-13, Feb. 16, 2006.) In addition, where the only effect of Trial Counsel's failure to effectively cross-examine State's witness was that the jury was not told of the discrepancies twice, Trial Counsel's failure did not materially affect the jury's deliberations as to result in Petitioner being denied effective assistance of counsel.

(Doc. 11, Ex. Q at 5-6.)

As the PCR court found, Navarro's inconsistent descriptions of Henry were brought out at trial. When Navarro testified on direct he stated that a third person is the one that struck him in the head and held him at gunpoint. (RT 2/14/06 at 105-06.) He also identified Henry as having pointed a gun at him. (*Id.* at 107.) Navarro stated on direct and re-direct that Henry was wearing a brown shirt and brown pants. (*Id.* at 110, 131.) Under cross-

- 7 -

1 examination by Henry's counsel, Navarro acknowledged that his trial testimony and what
2 he told a police officer right after the incident did not match. (*Id.* at 126.) He agreed that he
3 told a detective that Henry hit him on the head and that he never mentioned a third assailant.
4 (*Id.* at 126-27.) Henry's co-defendant's counsel cross-examined Detective Schneider about
5 Navarro's clothing description of the assailants. (RT 2/15/06 at 145-46.) In his report
6 Detective Schneider recorded that Navarro said a person in a brown shirt and brown pants
7 hit him with a gun and he identified that person to be Staples. (*Id.* at 146.) Co-defendant's
8 counsel was able to point out that the report contradicted Navarro's trial testimony. (*Id.*)

9 Because the inconsistencies in Navarro's descriptions of Henry were brought out at
10 trial, counsel was not deficient for not cross-examining Detective Schneider to restate
11 material that had already been covered. Further, Petitioner was not prejudiced because the
12 relevant evidence was before the jury and there is not a reasonable probability that the
13 outcome would have been different if the evidence had been repeated.

14 Henry also argues that counsel should have asked Detective Schneider about his
15 report, which stated that one of Jackson's children identified Henry as wearing black that
16 night, when in fact he was wearing brown. In Detective Schneider's report he recorded
17 Jackson's daughter as stating that she recognized and could identify Henry, she stated that
18 he was wearing black and shot her father in the leg twice. (Doc. 11, Ex. M, Ex. B at 3.)
19 Jackson's daughter did not testify, therefore, her identification of Henry's clothing was not
20 critical. If counsel had queried Detective Schneider on this point, that might have opened up
21 the remainder of her statement – including that she recognized and identified Henry as being
22 at the scene of the crime.[2] It was within reasonable parameters for counsel not to address
23 Jackson's daughter's description of Henry. Further, he suffered no prejudice because she was
24 not a trial witness and counsel already had sufficient evidence that there were varying,
25 contradictory descriptions of what he was alleged to have been wearing on the night of the

---

[2] Henry's wife is a cousin of Jackson's girlfriend, who is the mother of the children who were in the home.

- 8 -

crime.

The PCR court's denial of this claim was not an objectively unreasonable application of *Strickland*.

**Claim 1(c)**

Petitioner contends counsel was ineffective in failing to cross-examine three of the State's witnesses, Officer Thomas Hoffman, Officer Jeff Rowe and Officer Corey Doggett. The PCR court found that Petitioner failed to prove prejudice because he did not provide sufficient evidence that, but for counsel's inadequate cross-examination, he would not have been found guilty. (Doc. 11, Ex. Q at 6.) The PCR court further found that Henry failed to demonstrate counsel's performance was unreasonable or that it was not a tactical decision to forego cross-examination. (*Id.*)

Witness Officer Hoffman

Petitioner argues that counsel should have examined Officer Hoffman about the reasons victim Jackson refused to cooperate with the initial investigation and "a version of the events that took place in the house, which may have been different from one of the other stories told by Mr. Jackson." (Doc. 1 at 19.)

As found by the PCR court, Petitioner fails to demonstrate actual prejudice arising from counsel not cross-examining Officer Hoffman. Officer Hoffman explained that Jackson told him he did not want to discuss the crime until he had an opportunity to speak with his uncle. (RT 2/14/06 at 138-39.) Further testimony on the topic likely would not have been admissible because Officer Hoffman merely would have been speculating on Jackson's motivation. *See* Ariz. R. Evid. 602 (witness must have personal knowledge of matter). Petitioner fails to explain what evidence could have been brought out on cross-examination from Officer Hoffman that would have been a different version of events than "other stories told by Jackson." Or, why such evidence would have created a reasonable probability that Henry would not have been convicted. Petitioner's argument is too vague and conclusory to establish actual prejudice. The PCR court's denial of this claim was not objectively unreasonable.

- 9 -

Witness Officer Rowe

Petitioner contends counsel could have inquired more extensively about Officer Rowe's knowledge of the level of Henry's intoxication on the night of the crime. The PCR court noted that the testimony cited by Petitioner had to do with the intoxicated state of the co-defendant not Henry. Thus, the court found counsel was not deficient for failing to cross-examine Officer Rowe on this point.

This Court has reviewed the cited transcript pages and the entirety of Officer Rowe's testimony and he does not provide any evidence regarding Petitioner at all; his role in the investigation was to detain Henry's co-defendant, Staples. (RT 2/15/06 at 176-189.) Therefore, counsel was not ineffective in failing to cross-examine Officer Rowe regarding Petitioner's level of intoxication on the night of the crime. The PCR court's denial of this claim was not objectively unreasonable.

Witness Officer Doggett

Petitioner argues that, in failing to cross-examine Officer Doggett, counsel missed an opportunity to highlight the inconsistencies in victim Navarro's statements, regarding his description of Henry and how many people participated in the crime.

Officer Doggett testified that Navarro provided descriptions of two assailants – one in black with a do-rag and one in brown pants and a light shirt – and when the officer drove him to the show-up identifications of the two suspects the clothing matched the description Navarro had provided to him. (RT 2/15/06 at 72-73, 76.) Petitioner argues that on cross-examination trial counsel could have shown that Navarro gave different descriptions to different officers.

Officer Doggett could not testify to what Navarro told other officers. There was no need to conduct cross-examination so that the officer could re-state the descriptions Navarro gave him. Henry's co-defendant's counsel highlighted the fact that Navarro told Officer Doggett there were two assailants and never mentioned a third person as he did at trial. (RT 2/15/06 at 71-72, 74.) Again, there was no need for Henry's counsel to have the witness reiterate the same information.

- 10 -

Because Henry has not identified any additional information counsel could have elicited from officer Doggett on cross-examination that had not been testified to already by that officer or someone else, Petitioner has failed to prove actual prejudice. The PCR court's denial of this claim was not objectively unreasonable.

**Claim 1(d)**

Petitioner argues counsel was ineffective in failing to request a hearing regarding the victims' identifications of Henry. He contends that if such a hearing had been held there was a reasonable probability that the trial court would have precluded the victims from providing an in-court identification of Henry. He further contends he was prejudiced because he was unable to seek appellate review of the identifications because the issue had not been preserved. The PCR court found Petitioner's suggestions of prejudice conclusory and insufficient. (Doc. 11, Ex. Q at 7.) Further, the court held Petitioner was not prejudiced in light of the substantial evidence presented against him at trial. (*Id.*)

Petitioner's assertions of prejudice are, as found by the PCR court, vague and conclusory. He provides no foundation for his contention that if a pretrial identification hearing had been held the victims would have been precluded from identifying Henry at trial.[3] Further, even if the victims had been precluded from identifying the defendants in court, numerous police officers testified regarding the out-of-court identifications the victims provided of the defendants. Although identification was a critical issue in the case, counsel highlighted those issues as well as the credibility of the victims during cross-examination and closing arguments. Finally, there was a distant family relationship between victim Jackson

---

[3] Henry relies on one state court case, *State v. Edwards*, 139 Ariz. 217, 677 P.2d 1325 (Ct. App. 1983), for the proposition that a counsel's failure to request an identification hearing when a victim's description does not match the defendant is deficient and prejudicial. In *Edwards* the court found that there was a basis for counsel to request an identification hearing, however, the court was not applying *Strickland* and did not rely solely on the identification ground in reversing the conviction. Applying a stricter pre-*Strickland* standard, the court found that counsel's cumulative failures amounted to ineffective assistance because the State had not proven the errors harmless beyond a reasonable doubt. *Id.* at 221, 677 P.2d at 1329.

- 11 -

1  and the defendants (*see supra* note 2); therefore, there was little basis to question his
2  identification of the defendants. Petitioner has failed to establish that he was actually
3  prejudiced by counsel not requesting a pretrial identification hearing. The PCR court's denial
4  of this claim was not objectively unreasonable.

**Claim 1(e)**

Petitioner argues that counsel failed to gather critical potentially exculpatory evidence. Specifically, Henry argues that on the first day of trial telephone calls from an inmate at the jail came to light and these calls revealed the inmate knew of the crime that was the basis of the trial, knew Henry and his wife Catherine, and knew the victim Jackson and had some type of control over him. Henry argues that counsel did not obtain a copy of the calls nor review them. He argues that counsel could have interviewed the inmate, Samuel Rakeshaw, and could have used the information to discredit Jackson.

The first morning of trial, co-defendant's counsel motioned the court for a continuance arguing that he had just discovered some potentially exculpatory evidence. (RT 2/14/06 at 2.) The evidence was alleged to be phone calls between a jail inmate and the victims, Jackson and Navarro, in which the victims stated that they could not identify Staples as being at the scene of the crime. (*Id.*) Henry's counsel joined the motion to continue. (*Id.* at 6-7.) The court denied a continuance, advising Staples's counsel to have his investigator listen to the tapes while the trial went forward and stating that he would allow the victims to be recalled or Rakeshaw to be called as a witness if the tapes revealed relevant evidence. (*Id.* at 4-6.) At close of the next trial day, Staples's counsel stated that they were almost through the tapes and he did not believe he would have any additional evidence to present based on them but he needed to finish the review. (RT 2/15/06 at 180.) The following morning, Staples rested without mention of the phone calls. (RT 2/16/06 at 13.)

The PCR court found that Henry had failed to establish a reasonable probability that the outcome of trial would have been different if counsel had obtained and reviewed this evidence. (Doc. 11, Ex. Q at 7.) The court noted that it reviewed the evidence with respect to a motion for new trial and concluded it was not exculpatory. (*Id.* at 7-8.) Finally, the PCR

1  court held that Jackson was impeached at trial by the inconsistencies in his statements and
2  testimony, as well as the suggestion that he was a drug dealer; therefore, Henry was not
3  prejudiced by counsel's failure to impeach him with additional evidence. (*Id.* at 8.)

4  Before this Court, Henry cites nine statements from Rakeshaw to his girlfriend that
5  have no obvious connection to the defendants and their case. Petitioner provides no
6  evidentiary context for these statements and they are essentially meaningless in the absence
7  of other evidence or substantive argument about how this evidence could have changed the
8  outcome of the trial. After sitting through the trial, the PCR court heard post-trial argument
9  on this topic and read the complete transcripts of the phone calls, ultimately concluding the
10 evidence was not exculpatory and Henry was not prejudiced. Petitioner has not established
11 that ruling was an unreasonable application of *Strickland*.

12 **Claim 2**

13 Petitioner argues that appellate counsel was ineffective in preparing the opening
14 appellate brief in that he did not adequately develop the arguments. Henry contends he was
15 prejudiced because one of his claims was waived absent fundamental error and, if counsel
16 had properly prepared the brief, the outcome of the appeal might have been different. The
17 PCR court concluded that Petitioner's assertions of prejudice were conclusory and without
18 support, and he failed to establish that if counsel had prepared a more thorough brief there
19 was a reasonable likelihood that the appellate court would have granted relief. (Doc. 11, Ex.
20 Q at 10-11.)

21 Petitioner points to two statements by the Arizona Court of Appeals to support his
22 argument that counsel was deficient. First, as to Henry's claim that there was insufficient
23 evidence to sustain the verdict, the court noted, "Henry's opening brief contains a recitation
24 of applicable law and a few conclusory statements regarding his case, but he fails to provide
25 any relevant record citations. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi)." (Doc. 11, Ex. J at 5.)
26 Regardless, the appellate court reviewed this claim on the merits, finding substantial record
27 evidence to support all the elements of the offenses. (*Id.*) Second, with respect to Henry's
28 motion for a new trial, the court of appeals found the claim was waived absent fundamental

error because Henry provided some law and recited the points raised in his motion for new trial "but he provide[d] no other record citations and fail[ed] to adequately develop any substantive argument regarding the asserted grounds." (*Id.* at 5-6.) The appellate court then reviewed the claim for fundamental error and found none and no prejudice. (*Id.* at 6.) Such a review constitutes a merits evaluation of the claim. *See Huffman v. Ricketts*, 750 F.2d 798, 801 (9th Cir. 1984); *see also Walker v. Endell*, 850 F.2d 470, 474 & n.4 (9th Cir. 1987).

Because the Arizona Court of Appeals reviewed each of Henry's appellate claims on the merits, he fails to establish prejudice arising from counsel's performance. Additionally, he has failed to demonstrate how any of his claims had a reasonable probability of winning if counsel had provided a more thorough brief. Because Petitioner has not established actual prejudice, the PCR court's denial of this claim was not an objectively unreasonable application of *Strickland*.

## **RECOMMENDATION**

Claims 1 and 2 fail on the merits. Based on the foregoing, the Magistrate Judge recommends the District Court DISMISS the Petition for Writ of Habeas Corpus (Doc. 1).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV 12-198-TUC-JGZ**.

DATED this 18th day of April, 2013.

D. Thomas Ferraro
United States Magistrate Judge